ROBERT J. RILEY *v*. THE BOARD OF COMMISSIONERS OF THE
COUNTY OF OHIO, *etc., et al.*

(No. 9479)

Submitted March 10, 1943. Decided March 26, 1943.

RILEY, JUDGE, absent.

*Wright Hugus* and *James A. Byrum,* for relator.
*Chas. L. Ihlenfeld,* for respondents Board of Commissioners of County of Ohio, Edward F. McKee, its President, Hal T. McKain and Thomas F. Gavin, members thereof, Charles G. Fuhrman, clerk of said Board, and Raymond J. Falland, clerk of County Court of County of Ohio.
*Frank A. O'Brien* and *Tom. H. Johnson,* for respondent Carl B. Galbraith.

KENNA, JUDGE:

This proceeding in mandamus was brought by Robert J. Riley for the purpose of testing the validity of the appointment by the Board of Commissioners of Ohio County of Carl B. Galbraith to succeed the petitioner as one of the four commissioners of accounts in and for

Ohio County. The necessary formal parties respondent including the Board of Commissioners, its members and clerk, as well as the Clerk of the County Court of Ohio County, all appeared. However, the controverted questions are raised by Galbraith's demurrer to the petition and his answer, the allegations of which seem not to raise a material issue of fact, so that the conclusion at which we have arrived consists entirely of a question of law reached by considering the uncontradicted allegations of the respondent's answer. Since the matter is determinable only by considering constitutional and statutory provisions which are peculiarly applicable to Ohio County and upon which the order of the Board of Commissioners under attack, entered upon the tenth day of February, 1943, depends, it is necessary to state chronologically the provisions in question.

Under the provisions of the Constitution adopted in the year 1872, the county courts of this State then functioning, were continued, but the Legislature was vested with power "with the assent" of a majority of the voters in the counties affected, to "reform, modify, or alter" the county organizations by creating another court, "other tribunals" exercising police and fiscal powers or with probate powers and civil jurisdiction in general, the tribunals created by enactment to be either "separate or combined". Pursuant to the power thus conferred upon it the Legislature created for Ohio County a Board of Commissioners with power to administer the police and fiscal affairs of that county, and also created a County Court to be presided over by a single judge to be elected and to have jurisdiction in law and equity and to exercise "probate jurisdiction" with the power to appoint fiduciaries.

In 1880 the Constitution was altered so that the Legislature was deprived of its power to re-form county courts in general, the changed provisions transferring to county clerks the exercise of powers and discharge of duties theretofore required of tribunals established for judicial

purposes under Section Thirty-four of Article Eight of the Constitution of Eighteen Hundred and Seventy-two, expressly including matters of probate. However, the provision conferring probate jurisdiction upon county clerks was made subject to the clause "until otherwise provided by law". See Article 8, Section 24, Constitution of West Virginia.

In 1931 the provisions of what in 1933 became Code, 44-3-1, were amended so as to vest in county courts the power to appoint commissioners of accounts, except that in counties where separate tribunals administered police and fiscal affairs the officer known as the county clerk was accorded that power.

On January 19, 1939, the County Clerk of Ohio County removed Carl B. Galbraith as commissioner of accounts, and in his place appointed Robert J. Riley.

On March 10, 1939, the Legislature reenacted with material alterations Code, 44-3-1, so that in counties where there existed separate tribunals exercising police and fiscal powers, being the Board of Commissioners in Ohio County, the power to appoint commissioners of account was conferred upon those tribunals.

On February 10, 1943, the Ohio County Board of Commissioners removed the petitioner and appointed the respondent.

The position of the petitioner is that the office of commissioner of accounts functions as an integral part of the probate power, and that since the County Clerk of Ohio County is by the Constitution vested with exclusive probate jurisdiction, commissioners of account are an essential part of a constitutional office, and that consequently the act of 1939, by the terms of which the county clerk was deprived of the appointive power and that power was conferred upon the Board of Commissioners, is ineffective because it encroaches upon constitutional powers and is therefore unconstitutional. The respondent replies by saying that in Ohio County the office of a commissioner of accounts in all matters of pro-

bate is subordinate in all respects to the final decision of the county clerk, and that consequently the creation of that office by the Legislature does not affect the constitutional function of the county clerk in any way. In addition to this primary question there are a number of minor questions raised, including the relator's contention that since commissioners of accounts are required by statute to report to the court by which they were appointed, if the act of 1939 is held valid, Galbraith will be required to report in probate matters to the Board of Commissioners, which exercises no probate functions, and the other three commissioners of accounts of Ohio County will be required to report in probate matters to the county clerk, who did, in fact, appoint them to their offices. Respondent takes the position that the meaning of the statute requiring commissioners of accounts to report to the courts appointing them is confined to the current assignment, and means only that their reports shall go to the same tribunal from which the business in hand originated, and, therefore, that all commissioners of accounts in Ohio County will continue reporting to the county clerk who refers probate matters to them.

We are under the impression that a part of the confusion which exists in this matter owes its origin to the period when county courts possessed general civil jurisdiction, both at law and in chancery, and to the period when they exercised concurrent jurisdiction in probate matters with the circuit courts. Then there were no commissioners of account, courts of chancery, including then the county courts, were thought to possess inherent power to appoint commissioners in chancery. This the county court did in probate matters until, in the confused legislative period that followed the formation of West Virginia, the Legislature undertook to prohibit their appointment. Then followed the Code of 1879, Chapter 22, conferring upon all courts of record, expressly including county courts, power from time to time to appoint commissioners for executing their orders and decrees, and

for settling accounts of fiduciaries. This provision seems to have been the origin of the office of what is now known as commissioner of accounts and the transposition of its status and function seems to have gradually developed until the time when our county courts were deprived of their general civil jurisdiction and were no longer courts of chancery. Section 6 of Chapter 68 of the Acts of 1882 expressly provides for the appointment of commissioners of accounts by the county court. It will be observed that at that time the County Clerk of Ohio County under the Constitution of 1880 was vested with probate jurisdiction and that its Board of Commissioners under the same provision was looking after its police and fiscal matters, both to continue until otherwise provided by law. Speaking strictly, Ohio County had no county court.

From the above it will be noted that the office of commissioner of accounts owes its origin to legislation and that fact, coupled with the fact that in controverted matters referred to commissioners of accounts, they are required to take proof and report their findings of fact and law, subject to exception, to the body having power to confirm or reject, makes it rather difficult to reach the conclusion that they are performing, even in part, a delegated constitutional function. Speaking generally, that theory, it seems to us, would endanger the very existence of a great number of helpful agencies which are not vested with authority and yet contribute vitally to its expeditious exercise.

Based upon what has been said, we are of the opinion that a commissioner of accounts in Ohio County is entirely a legislative officer having no judicial powers in matters of probate and that, consequently, the Legislature may provide his appointment, qualification and tenure.

We do not believe it follows from what has been said that a commissioner of accounts in Ohio County is required to report in fiduciary matters to the Board of Commissioners. On the contrary, we believe that it is

a time-honored precept that commissioners of all kinds shall be required to report to that body of which they are acting as an adjunctive, as distinguished from integral, part. We therefore believe that the commissioners of accounts in Ohio County should report to, and settle their accounts with, the County Clerk of that county who acts as the Ohio County Court of Probate.

*Peremptory writ denied.*